IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUAN J. CARDENAS LIMON and
NATASHA GRACE WOOD,

Plaintiffs,

v.

PLANET HOME LENDING, LLC,

Defendant.

Case No. 3:26-cv-02040-AB

ORDER

**BAGGIO, District Judge:**

Plaintiffs Juan J. Cardenas Limon and Natasha Grace Wood bring this case against their mortgage loan servicer, Defendant Plant Home Lending, LLC. Compl., ECF No. 1. Plaintiffs bring claims under the Real Estate Settlement Procedures Act (RESPA), the Fair Debt Collection Practices Act (FDCPA), the Oregon Trust Deed Act (OTDA), the Oregon Unlawful Trade Practices Act (OUTPA), the Oregon Mortgage Servicer Act, and for breach of contract/promissory estoppel, breach of the implied covenant of good faith and fair dealing,

invasion of privacy and trespass, and intentional infliction of emotional distress. *Id.* ¶¶ 45–71. Plaintiffs allege that Defendant violated its agreement to suspend nonjudicial foreclosure activity on their home after the parties agreed to a Trial Payment Plan. *Id.* ¶¶ 1, 15. Plaintiffs now ask this Court to issue a temporary restraining order (TRO) suspending foreclosure activity on their loan. Pl.'s Mot. TRO 2, ECF No. 4. For the reasons that follow, the Court grants in part Plaintiffs' request for a TRO.

## BACKGROUND

Plaintiffs are "23 months delinquent" on their home loan. Compl. ¶ 15. In August 2026, the parties entered a three-month "Partial Claim" trial pursuant to the Fair Housing Act's Permanent Home Retention Options. *Id.* ¶¶ 15, 17. Under the terms of the Trial Payment Plan, Plaintiffs were to pay $2,353.30 on September 1, October 1, and November 1, 2026. *Id.* ¶ 17; Cardenas Limon Decl. Ex. A, ECF No. 5. The "trial packet" further explained that Plaintiffs had to accept the Trial Payment Plan by August 25, 2026, and that the "offer is revoked only if . . . payment is not received by the last day of the month in which it was due." Compl. ¶ 18; Cardenas Limon Decl. Ex. A.

Plaintiffs sent a written acceptance of the trial plan on August 13, 2026. Cardenas Limon Decl. ¶ 4, Exs. A–B. Defendant confirmed Plaintiffs' acceptance the next day and wrote that "foreclosure activity on the . . . loan will be suspended." *Id.* at Ex. A. Plaintiffs also requested that Defendant confirm that the foreclosure sale was cancelled or postponed before they made a payment. Compl. ¶ 24.

When Plaintiffs had not yet provided payment by late September, Defendant wrote Plaintiffs on September 23, 2026, that a "mitigation hold" was on their account and said that foreclosure would continue if the September payment was not received. Cardenas Limon Decl.

Ex. E. But Plaintiffs refuse to pay Defendant while their home is still listed as an auction online. Compl. ¶ 27; Cardenas Limon Decl. ¶ 2 ("I was not going to wire $2,353.30 into a trial and then be told the auction was still happening."). Plaintiffs allege that because foreclosure activity has not ceased "more than ten people have come to the Property," taking photos of Plaintiffs' children in front of the house, asking to see inside of Plaintiffs' home, and entering their backyard without permission. Compl. ¶ 35; Suppl. Cardenas Limon Decl. ¶ 5, ECF No. 6.

## STANDARDS

Under Federal Rule of Civil Procedure 65(b), a TRO may issue without notice to the opposing party or its attorney only if the movant shows (1) through "specific facts in an affidavit or a verified complaint" that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[,]" and (2) that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. *See W. Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008-09 (D. Or. 2019). The legal standards applicable to TROs and preliminary injunctions are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). The standard for a preliminary injunction is a high one: it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id*. at 20.

Ordinarily, Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language," the Ninth Circuit has explained that "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted).

**DICSUSSION**

As a preliminary matter, the Court finds it appropriate to address the scope of Plaintiff's requested TRO. In addition to requesting that the Court stop Defendant and its agents from proceeding with the sale of their home, Plaintiffs ask the Court to: (1) order nonparty real estate listing companies—such as Zillow and Auction.com—to remove the house from foreclosure and auction status; and (2) to order Defendant to mail a Trial Plan Agreement to Plaintiff's house. Pl.'s Mot. TRO 2. The Court declines to order the additional relief requested by Plaintiff. The real estate listing companies are not parties to this action, and Plaintiffs have not demonstrated that they are acting in concert with Defendant. *See* Rule 65(d)(2). Plaintiffs have also failed to show they would suffer irreparable harm if they do not receive a hard copy of the Trial Plan Agreement. Thus, the Court limits the requested relief to the sale of Plaintiffs' home scheduled for October 20, 2026.

Turning to Rule 65 and the *Winter* factors, the Court first finds that Plaintiffs have met both requirements of Rule 65(b). First, as required by Rule 65(b)(2), Plaintiffs certified in writing their efforts to give notice to Defendants.[1] Pl.'s Mot. TRO 6; *see also* Return of Service,

---

[1] On October 1, 2026, soon after Plaintiffs filed their Motion, the Court ordered Plaintiffs to serve Defendant with a scheduling order allowing Defendant an opportunity to appear and respond to Plaintiffs' Motion by October 9, 2025. Order, ECF No. 8. Plaintiff filed proof of

ECF No. 9. Second, Plaintiffs demonstrate they are likely to suffer significant irreparable harm from the imminent sale of their home. Judges in this district have concluded that the loss of a home may result in irreparable harm. *See Dawson v. Bank of New York Mellon*, 3:16-cv-01427-HZ, 2016 WL 3892438, at * 1 (D. Or. July 18, 2016) (finding nonjudicial foreclosure would cause irreparable harm from the loss of the plaintiff's real property); *Gosha v. Bank of New York Mellon Corp.*, 3:16-CV-00073-BR, 2016 WL 9211686, at *1 (D. Or. Jan. 25, 2016) (granting a TRO where it was a close question on the merits but the potential harm to the plaintiffs—who were senior citizens on a fixed income—was great); *Barnett v. BAC Home Loan Servicing, L.P.*, 772 F.Supp.2d 1328, 1338 (D. Or. Feb. 23, 2011) (finding the scheduled foreclosure sale would likely cause irreparable harm). In this case, Plaintiffs and their four minor children reside in the home. Cardenas Limon Decl. ¶¶ 1–2. Plaintiffs also have limited resources. *Id.* ¶ 2 ("Money in this house is tight."); *see also* Cardenas Limon Appl. IFP, ECF No. 2; Wood Appl. IFP, ECF No. 3. The loss of this property, therefore, would likely cause substantial, irreparable harm to Plaintiffs. Because this sale is scheduled for October 20, 2026, this harm may result before Defendant can be heard on this matter.

Second, there are close questions on the merits of Plaintiffs' claims. Plaintiff cites the OTDA and the RESPA implementing regulations as the basis for the TRO. Pl.'s Mot. TRO 4 (citing 12 C.F.R. § 1024.41(g) and Or. Rev. Stat. § (ORS) 86.752). Plaintiffs, however, cannot obtain injunctive relief under RESPA. *See Rivera v. BAC Home Loans Servicing*, No. C 10-02439 RS, 2010 WL 2757041, at *4 (N.D. Cal. July 9, 2010) (finding the plaintiff's RESPA claims could not stop a foreclosure because injunctive relief is not available under RESPA). And

---

service of the Order on Defendant's registered agent dated October 2, 2026. *See* Certificate of Service, ECF No. 10. Plaintiffs also sent these documents to Defendant by email. Cardenas Limon Decl., ECF No. 11. Defendants have not filed a response to Plaintiff's Motion for a TRO.

while injunctive relief is available to Plaintiffs under the OTDA, *see, e.g., Niday v. GMAC Mortg., LLC*, 353 Or. 648, 650, 302 P.3d 444 (2013) (noting "the underlying case [was] an action for declaratory and injunctive relief" where the plaintiff alleged that the requirements for nonjudicial foreclosure under the OTDA had not been satisfied), it is not entirely clear from the Complaint or supporting documents that Plaintiffs would succeed on this claim. As relevant here, ORS 86.752 prohibits Defendant from pursing a nonjudicial foreclosure unless Plaintiffs "ha[ve] not complied with the terms a foreclosure avoidance measure to which [Plaintiffs] have agreed" and Defendant "has complied with the provisions of ORS 86.748." ORS 86.752(5)–(6). ORS 86.748, in turn, requires that Defendant give a specific written notice to Plaintiffs that they have not complied with their foreclosure avoidance measure within ten days after making a determination that they failed to comply. ORS 86.748(1)(a). Here, it is unclear whether Plaintiffs complied with the parties' foreclosure avoidance measure because they failed to make the September 2026 payment pursuant to the Trial Payment Plan. And assuming Defendant's responsibility to provide Plaintiffs with notice under ORS 86.748 had been triggered at the time that the case was filed, Cardenas Limon Decl. Exs. A, D, it is unclear whether the September 23, 2026 email complied with the statutory notice requirements, *see id.* ¶¶ 8-9, Ex. E. Nevertheless, the severity of the harm that Plaintiffs would face with the loss of their home offsets their lesser showing of this element of the *Winter* test.

Third, the harm that Plaintiffs face also outweighs any potential harm to Defendant from postponing the foreclosure sale, particularly in light of Defendant's prior agreement to cancel the foreclosure sale in light of the trial payment plan. Cardenas Limon Decl. Ex. A ("Now that you have provided your written attestation and acceptance of the Trial Payment Plan, foreclosure activity on the above-referenced loan will be suspended, consistent with 12 C.F.R. § 1024.41.").

Fourth, the public interest factor in this case is neutral. "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor" in the preliminary injunction analysis. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009) (citation modified). But, if the impact of the injunction reaches beyond the parties and potentially impacts the public, the public interest is relevant to the analysis. *Id.* Here, this factor is not relevant to the analysis: the TRO is limited to restraining Defendant from conducting the foreclosure sale and does not involve any nonparties to the action.

Finally, a TRO may issue only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has discretion as to the amount of security, if any, that should be required. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Plaintiffs ask the Court to issue the TRO without a bond, arguing that Defendant already holds the deed of trust and that the TRO does not increase any risk to Defendant because it already agreed to cease foreclosure activities. Pl.'s Mot. TRO 5. But Plaintiffs also agreed to pay Defendant each month in exchange for its promise to suspend foreclosure activities. The Court, therefore, finds security in the amount of the proposed September payment under the Trial Payment Plan is proper in this matter. The Court therefore orders Plaintiffs to pay a security in the amount of $2,353.30.

///

///

///

///

**ORDER**

Based on the record, including the Complaint [1], Motion for Temporary Restraining Order [4], and Plaintiffs' supporting declarations [5][6], Plaintiffs' Motion for a Temporary Restraining Order [4] is GRANTED IN PART. The Court ORDERS as follows:

1. The nonjudicial sale of the property located at, and commonly known as, 1593 S. Camille Place, Newberg, Oregon 97132, shall be halted during the period this Temporary Restraining Order is in place; and

2. Defendant and its officers, agents, employees, and all other persons in active concert or participation with Defendant who receive actual notice of this Order, by personal service or otherwise, are prohibited from either directly or indirectly taking any actions to advance or conduct the nonjudicial sale of the property during the period of time this Temporary Restraining Order is in place.

This Order will expire within 14 days of its issuance. Defendant's response to Plaintiffs' motion for a preliminary injunction is due October 22, 2026, the same day Defendant's Answer is due. Plaintiffs' optional reply is due Monday, October 26, 2026. A hearing on the preliminary injunction will be held on Tuesday, October 27, 2026, at 11:00 AM in Courtroom 14B before Judge Baggio.

Plaintiffs are required to give security in the amount of $2,353.30 in connection with this Order.

IT IS SO ORDERED.

DATED this 14th day of October, 2026.

AMY M. BAGGIO
United States District Judge